UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAR 3 0 2017

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | **Criminal No. 4:15-cr-0564-S1** |
| | § | |
| MIKE BUENO, | § | 18 U.S.C. § 924(c)(1)(A) |
| also known as Mocho, | § | 18 U.S.C. § 924(j)(1) |
| EDUARDO HERNANDEZ, | § | 18 U.S.C. § 1951(a) |
| also known as Lepo, | § | 18 U.S.C. § 1956(h) |
| ARTURO RAMIREZ, JR., | § | 18 U.S.C. § 1962(d) |
| also known as China, | § | 21 U.S.C. § 841(a)(1) |
| JOSE ROLANDO GONZALEZ, | § | 21 U.S.C. § 846 |
| also known as Rollie, | § | |
| ERNESTO ALONZO RUIZ, | § | |
| also known as Gallito, | § | |
| HIPOLITO GONZALEZ, | § | |
| also known as Pollie, | § | |
| ISRAEL GONZALEZ, | § | |
| also known as Rayo, | § | |
| ROLANDO CRUZ, | § | |
| also known as Party, | § | |
| JESUS SILVA, | § | |
| also known as Bola, | § | |
| LUIS ANTONIO SALDIVAR, | § | |
| also known as Flaco, | § | |
| DANIEL SAENZ, | § | |
| also known as Danny Boy, | § | |
| OCTAVIO MUÑIZ, | § | |
| also known as Tavo, | § | |
| JOSEPH ALBERTO LOPEZ, | § | |
| MARGIL REYNA, JR., | § | |
| also known as Mikeo, | § | |
| JOSHUA OMAR SANTILLAN, | § | |
| CIRO MOYA, | § | |
| ROBERTO CORTEZ, | § | |
| also known as Robe, | § | |
| RENE VELA, | § | |
| also known as Gordo, | § | |
| CARLOS DE LA ROSA, | § | |
| also known as Charlie, | § | |
| ERNESTO SAENZ, | § | |
| also known as Tuerto, | § | |

1

LUIS ALBERTO TELLO,                §
also known as Wicho,               §
RICARDO ORTEGA,                    §
IVAN RODRIGUEZ,                    §
VERONICA CHAVEZ,                   §
and                                §
ROBERTO REYES,                     §
also known as Pelon                §

## SEALED
## FIRST SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

## COUNT ONE
Title 18 U.S.C. § 1962(d)

### THE RACKETEERING ENTERPRISE

At all times relevant to this First Superseding Indictment:

1.      Defendants, Mike BUENO, aka Mocho, Eduardo HERNANDEZ, aka Lepo, Arturo

RAMIREZ, Jr., aka China, Jose Rolando GONZALEZ, aka Rollie, Ernesto Alonzo RUIZ, aka

Gallito, Hipolito GONZALEZ, aka Pollie, Israel GONZALEZ, aka Rayo, Rolando CRUZ, aka

Party, Jesus SILVA, aka Bola, Luis Antonio SALDIVAR, aka Flaco,  Octavio MUÑIZ, aka Tavo,

Joseph Alberto LOPEZ, Margil REYNA, Jr., aka Mikeo, Joshua Omar SANTILLAN, Roberto

CORTEZ, aka Robe, Rene VELA, aka Gordo, Carlos DE LA ROSA, aka Charlie, Ernesto SAENZ,

aka Tuerto, and Luis Alberto TELLO, aka Wicho, and others were members and associates of a

criminal organization known as the Tri-City Bombers whose members and associates engaged in:

(a) the illegal trafficking of cocaine, marijuana, methamphetamine and heroin; (b) the laundering

of drug proceeds; and (c) acts of violence, including murder, attempted murder, assaults, robberies

of other drug traffickers and other crimes within the Southern District of Texas and elsewhere.

2.      The Tri-City Bombers criminal organization, including its leadership, members and

associates, constituted an "enterprise" as defined by Title 18, United States Code, § 1961(4) ("the

2

Enterprise"), that is, a group of individuals associated in fact that was engaged in and the activities of which affected interstate and foreign commerce. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of obtaining the objectives of the Enterprise.

3.      In the early 1980s, young men from Lopezville, Texas, a small predominately-Hispanic area in the South Texas border area, formed a street football team called the "Lopezville Bombers." At the same time, young men from the nearby town of Pharr, Texas formed a break dancing group called the "Tri-City Poppers."

4.      In the mid-1980s, the Lopezville Bombers and Tri-City Poppers merged and became the Tri-City Bombers. In the early days of its formation, the Tri-City Bombers would mostly gather and associate for the purpose of playing pickup football games against teams from various nearby cities. Over a period of time, local law enforcement began to notice an increase in fights after these football games and due to the violent altercations the Tri-City Bombers developed a reputation as a tough group of young men.

5.      In the late 1980s, the Tri-City Bombers evolved into a gang with a defined leadership structure, colors, tattoos and rules. The Tri-City Bombers organization included titles such as President, Vice-President, General, Captain, Lieutenant, Sergeant, "Carnal" (Brother) and "Prospecto" (Prospect).

6.      In the early 1990s, the Tri-City Bombers split into two (2) factions: Tri-City Bombers and the Texas Chicano Brotherhood. The split resulted in a wave of violence in the Tri-City area of Pharr, San Juan and Alamo, Texas.

7.      An individual who wanted to become a Tri-City Bombers member was referred to as a "Prospecto." In order to become a member, the Prospecto had to have a "Padrino" (Godfather)

to vouch for him as being worthy of becoming a full-fledged member. Once a "Prospecto" became a member, he was referred to as a "Carnal".

8.     The Tri-City Bombers adopted black and red as its colors. In addition, some members tattooed the following on their bodies: (a) the letters "TCB"; (b) a 1939 Chevy Bomb car; (c) the number "39"; (d) a Cherry bomb; (e) a necklace tattoo made of small bombs; or (f) three high-rise buildings or three-point crown to represent the Tri-City area.

9.     The rules of the Tri-City Bombers included, among others: membership for life; brotherhood before anything else; never cooperate with law enforcement; obey orders of superiors; pay a monthly fee to the Enterprise; give 10% of any criminal earnings to the Enterprise; and never disrespect the Tri-City Bombers family.

10.     The consequences for violating the rules included severe beating, known as a "disiplina" (discipline), to being "x-out" (marked for murder).

11.     The Enterprise had a hierarchy for making decisions. The leaders of the Enterprise had such titles as President, Vice-President, General, Captain, Lieutenant and Sergeant. These leaders determined whether members violated the rules and the punishment for any violation.

12.     The Enterprise's strict set of rules ensured loyalty and participation in criminal activities. It was common for an Enterprise member to demonstrate his loyalty by taking responsibility for a crime in order to shield a member with superior rank from criminal responsibility.

13.     The Enterprise members maintained regular communications with their members who were in prison for violent crimes and drug trafficking. Such communications were often through letters or telephone calls. Coded language was used frequently in order to mislead law enforcement officers as to the true message contained in the letters and telephone calls.

14.     The Enterprise members maintained regular communications with each other through regular meetings and telephone calls. In communications over cellular telephones the Enterprise members used coded language when they discussed any criminal activity. For instance, when discussing the type of controlled substances, they may have referred to it as "white" (cocaine), "green" (marijuana), "popcorn" (high quality marijuana), and "stuff"; when discussing drug proceeds, they may have referred to it as "paper" or "coin"; when discussing the transportation of controlled substance, they may have referred to it as a "ride" or "trip"; and when referring to a particular city, such as Houston, they may have referred to it as "H" or Donna, Texas, they may have referred to it as "Ghost Town."

15.     The power of the Enterprise was used to create fear and intimidation that shielded its members from criminal responsibility, ensured the timely payment of drug debts and prevented the theft of members' money or drugs. Violent retribution was an important activity of the Enterprise. Such violent retribution helped enforce loyalty to the Enterprise that was necessary to the smooth running of its criminal activities.

16.     Although the Enterprise began in the South Texas area, its members and criminal activities are not bound by that geographical area. In fact, Enterprise members lived across Texas as well as in Georgia, Oklahoma, Missouri, Indiana and South Dakota and other states where they continued to engage in criminal activities.

<u>THE PURPOSES OF THE ENTERPRISE</u>

17.     The purposes of the Enterprise included the following:

a.      maintaining a powerful organization that protected its members and associates from rival criminal organizations, those disloyal to the Enterprise or those who lost or stole the Enterprise's controlled substances;

5

b.    enriching its members and associates through criminal activities which included, the illegal distribution of controlled substances and other criminal acts;

c.    preserving and protecting its power, territory and profits through the use of intimidation, violence and threats of violence; and

d.    keeping rival gangs, potential informants, potential cooperating defendants, witnesses, law enforcement and the public-at-large in fear of the Enterprise through violence and threats of violence.

18.    The Enterprise members acted to protect each other and to build a strong organization through intimidation and violence against outsiders and through strict and harsh discipline of its members and associates who violated its rules.

<u>THE DEFENDANTS</u>

19.    The Enterprise members and associates had the following roles:

a.    Mike BUENO, aka Mocho, held the rank of Captain. BUENO was a leader who coordinated and directed members and associates of the Enterprise in committing home invasion robberies to steal controlled substances as well as being involved in the transportation of large quantities of controlled substances from the Rio Grande Valley of Texas to various cities across the United States. The proceeds from the sale of the controlled substances were transported to the Rio Grande Valley of Texas via vehicles or through financial institutions.

(b)    Eduardo HERNANDEZ, aka Lepo, held the rank of Lieutenant. HERNANDEZ was a leader who was involved in the distribution of cocaine locally as well as being involved in the transportation of controlled substances from the Rio Grande Valley of Texas to various cities across the United States. The proceeds from the sale of the controlled substances were transported to the Rio Grande Valley of Texas via vehicles or through financial institutions.

(c)     Arturo RAMIREZ, Jr., aka China, held the rank of Sergeant. RAMIREZ was a leader who was involved in the distribution of cocaine, methamphetamine and heroin locally as well as being involved in the transportation of controlled substances from the Rio Grande Valley of Texas to various cities across the United States. The proceeds from the sale of the controlled substances were transported to the Rio Grande Valley of Texas via vehicles or through financial institutions.

(d)     Jose Rolando GONZALEZ, aka Rollie, held the rank of Captain. J. GONZALEZ was a leader who has contact with large-scale suppliers of controlled substances; was involved in coordinating the transportation of cocaine, marijuana, methamphetamine and heroin to Atlanta, Georgia, Ft. Wayne, Indiana, St. Louis, Missouri and other cities. J. GONZALEZ also coordinated the movement of the drug proceeds from the sale of the controlled substances back to the Rio Grande Valley of Texas.

(e)     Ernesto Alonzo RUIZ, aka Gallito, held the rank of Sergeant. RUIZ was a leader who was involved in the distribution of controlled substances locally as well as coordinating the transportation of large quantities of marijuana to various cities across the United States. RUIZ also coordinated the movement of the drug proceeds from the sale of the controlled substances back to the Rio Grande Valley of Texas.

(f)     Hipolito GONZALEZ, aka Pollie, was an associate who was involved in the transportation of controlled substances from the Rio Grande Valley of Texas to various cities across the United States. H. GONZALEZ also coordinated the movement of the drug proceeds from the sale of the controlled substances back to the Rio Grande Valley of Texas.

(g)     Israel GONZALEZ, aka Rayo, was a member who was involved in the transportation of controlled substances from the Rio Grande Valley of Texas to various cities

across the United States. I. GONZALEZ also coordinated the movement of the drug proceeds from the sale of the controlled substances back to the Rio Grande Valley of Texas.

(h)     Rolando CRUZ, aka Party, was a member who was involved in the transportation of controlled substances from the Rio Grande Valley of Texas to various cities across the United States. CRUZ also coordinated the movement of the drug proceeds from the sale of the controlled substances back to the Rio Grande Valley of Texas.

(i)     Jesus SILVA, aka Bola, held the rank of Sergeant. SILVA was involved in coordinating home invasion robberies to steal controlled substances; sending controlled substances in the mail to various cities across the United States; and coordinating the movement of the drug proceeds through the United States mail back to the Rio Grande Valley of Texas.

(j)     Luis Antonio SALDIVAR, aka Flaco, was an associate who was involved in the distribution of controlled substances and in using financial institutions to launder drug proceeds.

(k)     Octavio MUÑIZ, aka Tavo, was a member who was involved in the packaging and loading large quantities of marijuana into load vehicles in the Rio Grande Valley of Texas. MUÑIZ also followed the load vehicles to their final destination where he assisted in the off-loading of the marijuana.

(l)     Joseph Alberto LOPEZ was a member who was involved in committing home invasion robberies for the purpose of stealing controlled substances. LOPEZ participated in a home invasion robbery that led to the killing of the home owner.

(m)     Margil REYNA, Jr., aka Mikeo, was a member who was involved in committing home invasion robberies for the purpose of stealing controlled substances. REYNA participated in a home invasion robbery that led to the killing of the home owner.

8

(n)     Joshua Omar SANTILLAN was a member who was involved in committing home invasion robberies for the purpose of stealing controlled substances. SANTILLAN participated in a home invasion robbery that led to the killing of the home owner.

(o)     Roberto CORTEZ, aka Robe, was an associate who had contact with large scale suppliers of controlled substances. CORTEZ supplied the Enterprise with cocaine, marijuana and methamphetamine and was involved in the transportation of large amounts of marijuana and cocaine to the Atlanta, Georgia area.

(p)     Rene VELA, aka Gordo, was an associate who coordinated home invasion robberies for the purpose of stealing controlled substances.

(q)     Carlos DE LA ROSA, aka Charlie, was an associate who allowed the use of his property for the purpose of storing, concealing and packaging large quantities of controlled substances.

(r)     Ernesto SAENZ, aka Tuerto, was an associate who was involved in following vehicles loaded with controlled substances from the Rio Grande Valley to their final destination for the purpose of scouting for law enforcement.

(s)     Luis Alberto TELLO, aka Wicho, was an associate who was involved in committing home invasion robberies for the purpose of stealing controlled substances. TELLO participated in a home invasion robbery that led to the killing of the home owner.

<u>THE RACKETEERING CONSPIRACY</u>

20.     Beginning on or about January 2009 and continuing to the date of this First Superseding Indictment, within the Southern District of Texas and elsewhere, the defendants

MIKE BUENO, aka Mocho,
EDUARDO HERNANDEZ, aka Lepo,
ARTURO RAMIREZ, JR., aka China,

JOSE ROLANDO GONZALEZ, aka Rollie,
ERNESTO ALONZO RUIZ, aka Gallito,
HIPOLITO GONZALEZ, aka Pollie,
ISRAEL GONZALEZ, aka Rayo,
ROLANDO CRUZ, aka Party,
JESUS SILVA, aka Bola,
LUIS ANTONIO SALDIVAR, aka Flaco,
OCTAVIO MUÑIZ, aka Tavo,
JOSEPH ALBERTO LOPEZ,
MARGIL REYNA, JR., aka Mikeo,
JOSHUA OMAR SANTILLAN,
ROBERTO CORTEZ, aka Robe,
RENE VELA, aka Gordo,
CARLOS DE LA ROSA, aka Charlie,
ERNESTO SAENZ, aka Tuerto,
and
LUIS ALBERTO TELLO, aka Wicho,

each being a person employed by and associated with, as described in paragraphs 1 through 19 of this First Superseding Indictment, an Enterprise, the Tri-City Bombers, that was engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire and agree together and with others known and unknown to the Grand Jury to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, §§ 1961(1) and 1961(5), said pattern of racketeering activity consisting of multiple acts indictable under:

    a.    Title 18, United States Code, § 1951 (interference with commerce by robbery);

    b.    Title 18, United States Code, § 1956 (laundering monetary instruments);

multiple offenses involving:

    c.    Title 21, United States Code, § 846 (conspiracy to possess with intent to distribute controlled substances and conspiracy to distribute controlled substances);

    d.      Title 21, United States Code, § 841(a)(1) (possession with intent to distribute controlled substances and distribution of controlled substances);

and multiple acts involving:

    e.      Murder in violation of Texas Penal Code §§ 19.02, 15.01, 15.02, 7.01 and 7.02; and

    f.      Robbery in violation of Texas Penal Code §§ 29.02, 29.03, 15.01, 15.02, 7.01 and 7.02.

21.    It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

<u>THE MANNER AND MEANS OF THE ENTERPRISE</u>

22.    Among the manner and means used by the defendants and co-conspirators to achieve the object of the conspiracy were the following:

    a.      members, associates and others engaged in criminal activity that included, murder, attempted murder, robbery and illegal drug trafficking to achieve its goal of making money;

    b.      members held regular meetings to discuss and vote on important decisions that include retaliation against rival gangs, whether a member has violated a rule and, if so, the type and form of punishment and how to expand their illegal drug trafficking activities;

    c.      members, associates and others purchased, maintained and circulated weapons and firearms for use in criminal activities;

    d.      members, associates and others coordinated the receiving, storing, packaging and transportation in vehicles large quantities of cocaine, marijuana, methamphetamine

and heroin from the Rio Grande Valley of Texas to various cities across the United States;

e. members, associates and others coordinated the receiving, storing, packaging and movement of large quantities of cocaine, marijuana, methamphetamine and heroin using the United States mail;

f. members, associates and others obtained information regarding locations where controlled substances are being stored and coordinated home invasion robberies to steal the controlled substances;

g. members, associates and others coordinated the receiving, packaging, concealment and movement of the drug proceeds in vehicles back to the Rio Grande Valley of Texas;

h. members, associates and others coordinated the receiving of drug proceeds by depositing the drug proceeds into bank accounts in various cities across the United States;

i. members, associates and others coordinated the withdrawal of the drug proceeds from bank accounts in the Rio Grande Valley of Texas; and

j. members, associates and others used and threatened to use violence against potential informants, cooperating defendants and witnesses.

<u>OVERT ACTS</u>

23. In furtherance of the conspiracy and to achieve the objective thereof, the conspirators performed and caused to be performed the following overt acts, among others, in the Southern District of Texas and elsewhere:

(a) On or about July 17, 2009, Mike BUENO, aka Mocho, told conspirators that a house located in Edinburg, Texas contained a large quantity of cocaine;

(b) On or about July 17, 2009, Mike BUENO, aka Mocho, drove around the area of the

house located in Edinburg, Texas looking for law enforcement officers;

(c)     On or about July 21, 2009, Jesus SILVA, aka Bola, told conspirators that a house located in Mission, Texas contained a large quantity of marijuana;

(d)     On or about July 21, 2009, Jesus SILVA, aka Bola, drove around the area of the house located in Mission, Texas looking for law enforcement officers;

(e)     On or about July 21, 2009, Mike BUENO, aka Mocho, drove around the area of the house located in Mission, Texas looking for law enforcement officers;

(f)     On or about January 30, 2012, Roberto CORTEZ, aka Robe, spoke to a confidential source regarding the meeting location for a drug transaction.

(g)     On or about April 12, 2012, Luis Alberto TELLO, aka Wicho, told Joseph Alberto LOPEZ that a house located in Edinburg, Texas contained a large quantity of marijuana;

(h)     On or about April 12, 2012, Mike BUENO, aka Mocho, met with Joseph Alberto LOPEZ, Margil REYNA, Jr., aka Mikeo, and Joshua Omar SANTILLAN;

(i)     On or about April 12, 2012, Mike BUENO, aka Mocho, gave permission for Joseph Alberto LOPEZ, Margil REYNA, Jr., aka Mikeo, and Joshua Omar SANTILLAN to conduct a home invasion robbery;

(j)     On or about April 12, 2012, Joseph Alberto LOPEZ asked a conspirator for his vehicle to use in a home invasion robbery;

(k)     On or about April 12, 2012, Joseph Alberto LOPEZ possessed a firearm;

(l)     On or about April 12, 2012, Margil REYNA, Jr., aka Mikeo, possessed a firearm;

(m)     On or about April 12, 2012, Joshua Omar SANTILLAN drove Joseph Alberto LOPEZ and Margil REYNA, Jr., aka Mikeo, to a house located in Edinburg, Texas;

(n)     On or about April 12, 2012, Joseph Alberto LOPEZ broke into a house in Edinburg,

Texas;

(o)     On or about April 12, 2012, Margil REYNA, Jr., aka Mikeo, broke into a house in Edinburg, Texas;

(p)     On or about October 19, 2012, Mike BUENO, aka Mocho, told conspirators to burn a Volvo tractor;

(q)     On or about October 19, 2012, Roberto CORTEZ, aka Robe, told Mike BUENO aka, Mocho, how to divide a load of marijuana;

(r)     On or about October 19, 2012, Rene VELA, aka Gordo, told an unindicted conspirator to drive a Volvo tractor and trailer from his house to the house of the unindicted conspirator;

(s)     On or about October 19, 2012, Rene VELA, aka Gordo, told unindicted conspirators to off-load marijuana bundles from a Volvo tractor-trailer;

(t)     On or about November 15, 2012, in a telephone call, Mike BUENO, aka Mocho, told Arturo RAMIREZ, Jr., aka China, that conspirators went into the property but that the "325" bricks were not there;

(u)     On or about November 16, 2012, in a telephone call, Arturo RAMIREZ, Jr., aka China, told Mike BUENO, aka Mocho, that the "trip" contained "360";

(v)     On or about November 16, 2012, in a telephone call, Mike BUENO, aka Mocho, told Arturo RAMIREZ, Jr., aka China, that if the "stuff" was good he could pick it up and take it to Arkansas;

(w)     On or about November 17, 2012, in a telephone call, Jose Rolando GONZALEZ aka, Rollie, told Arturo RAMIREZ, Jr., aka China, that he was rounding up everyone because the tractor-trailer was leaving;

(x)      On or about November 17, 2012, Jose Rolando GONZALEZ, aka Rollie, bought wrap and boxes;

(y)      On or about November 17, 2012, in a telephone call, Israel GONZALEZ, aka Rayo, told Arturo RAMIREZ, Jr., aka China, that the tractor-trailer driver was already in Three Rivers, Texas;

(z)      On or about November 18, 2012, Ernesto SAENZ, aka Tuerto, traveled to the Northern District of Texas;

(aa)     On or about November 20, 2012, Israel GONZALEZ, aka Rayo, traveled to the Eastern District of Missouri;

(bb)     On or about November 20, 2012, Rolando CRUZ, aka Party, traveled to the Eastern District of Missouri;

(cc)     On or about December 6, 2012, Eduardo HERNANDEZ, aka Lepo, bought wrap, tape and grease;

(dd)     On or about December 6, 2012, Jose Rolando GONZALEZ, aka Rollie, traveled to Roma, Starr County, Texas;

(ee)     On or about December 6, 2012, Hipolito GONZALEZ, aka Pollie, traveled to Roma, Starr County, Texas;

(ff)     On or about December 6, 2012, Roberto CORTEZ, aka Robe, called Rene VELA, aka Gordo;

(gg)     On or about December 6, 2012, Ernesto RUIZ, aka Tuerto, traveled to Houston, Texas;

(hh)     On or about August 7, 2014, Arturo RAMIREZ, Jr., aka China, called Roberto CORTEZ, aka Robe, and asked Roberto CORTEZ, aka Robe, if he had any methamphetamine;

(ii)     On or about August 7, 2014, Arturo RAMIREZ, Jr., aka China, traveled to La Copa Hotel located at 2000 S. 10th Street in McAllen, Texas;

(jj)     On or about August 7, 2014, Arturo RAMIREZ, Jr., aka China, met with a confidential source;

(kk)     On or about August 21, 2014, Arturo RAMIREZ, Jr., aka China, fled from police officers; and

(ll)     On or about August 21, 2014, Arturo RAMIREZ, Jr., aka China, while driving a vehicle threw out a bag.

All in violation of Title 18, United States Code, § 1962(d).

NOTICE OF SPECIAL SENTENCING FACTORS REGARDING COUNT ONE

a.     The allegations of Count One of this First Superseding Indictment are hereby re-alleged and re-incorporated as though set forth fully herein:

b.     Beginning on or about January 2009 and continuing to the date of this First Superseding Indictment, within the Southern District of Texas and elsewhere, defendants

ARTURO RAMIREZ, JR., aka China,
JOSE ROLANDO GONZALEZ, aka Rollie,
and
JESUS SILVA, aka Bola,

did knowingly conspire to possess with intent to distribute and did intentionally possess with intent to distribute more than 50 grams of a methamphetamine in violation of Title 21, United States Code, §§ 846, 841(a)(1) and 841(b)(1)(A).

g.     On or about April 12, 2012, in the Southern District of Texas, Hidalgo County Texas, and within the jurisdiction of the Court, defendants,

MIKE BUENO, aka Mocho,
JOSEPH ALBERTO LOPEZ,
MARGIL REYNA, JR., aka Mikeo,

16

JOSHUA OMAR SANTILLAN,
and
LUIS ALBERTO TELLO, aka Wicho,

did murder, and aid and abet the murder of, Victor Manuel Serna that is, intentionally and

knowingly caused the death of an individual, that is Victor Manuel Serna, and committed or

attempted to commit a felony, other than manslaughter, and in the course of and in furtherance of

the commission or attempt, or in immediate flight from the commission or the attempt, committed

or attempted to commit an act clearly dangerous to human life that caused the death of an

individual, that is Victor Manuel Serna, and, in the attempt to carry out a conspiracy to commit

one felony, another felony was committed by one of the conspirators, all conspirators are guilty of

the felony actually committed, though having no intent to commit it, if the offense was committed

in furtherance of the unlawful purpose and was one that should have been anticipated as a result

of the carrying out of the conspiracy, all in violation of Texas Penal Code §§ 19.02(b)(1),

19.02(b)(3), and 7.02(b).

      d.      On or about July 17, 2009, in the Southern District of Texas, Hidalgo County Texas,

and within the jurisdiction of the Court, defendant

MIKE BUENO, aka Mocho,

in the course of committing theft as defined in Chapter 31 and with intent to obtain and maintain

control of the property, did intentionally and knowingly threaten and place another in fear of

imminent bodily injury or death while using and exhibiting a deadly weapon in violation of Texas

Penal Code §§ 29.02, 29.03, 7.01 and 7.02.

      e.      On or about July 21, 2009, in the Southern District of Texas, Hidalgo County Texas,

and within the jurisdiction of the Court, defendants

MIKE BUENO, aka Mocho,
and

17

JESUS SILVA, aka Bola,

in the course of committing theft as defined in Chapter 31 and with intent to obtain and maintain

control of the property, did intentionally and knowingly threaten and place another in fear of

imminent bodily injury or death while using and exhibiting a deadly weapon in violation of Texas

Penal Code §§ 29.02, 29.03, 7.01 and 7.02.

      f.      On or about October 19, 2012, in the Southern District of Texas, Hidalgo County

Texas, and within the jurisdiction of the Court, defendants

MIKE BUENO, aka Mocho,
RENE VELA, aka Gordo,
and
ROBERTO CORTEZ, aka Robe,

in the course of committing theft as defined in Chapter 31 and with intent to obtain and maintain

control of the property, did intentionally and knowingly threaten and place another in fear of

imminent bodily injury or death while using and exhibiting a deadly weapon in violation of Texas

Penal Code §§ 29.02, 29.03, 7.01 and 7.02.

**COUNT TWO**
(Conspiracy to PWID marijuana)

Beginning on or about January 2009 to the date of this First Superseding Indictment, in

the Southern District of Texas and elsewhere, the defendants

MIKE BUENO, aka Mocho,
EDUARDO HERNANDEZ, aka Lepo,
ARTURO RAMIREZ, JR., aka China,
JOSE ROLANDO GONZALEZ, aka Rollie,
ERNESTO ALONZO RUIZ, aka Gallito,
HIPOLITO GONZALEZ, aka Pollie,
ISRAEL GONZALEZ, aka Rayo,
ROLANDO CRUZ, aka Party,
LUIS ANTONIO SALDIVAR, aka Flaco,
OCTAVIO MUÑIZ, aka Tavo,
JOSEPH ALBERTO LOPEZ,
MARGIL REYNA, JR., aka Mikeo

18

JOSHUA OMAR SANTILLAN,
ROBERTO CORTEZ, aka Robe,
RENE VELA, aka Gordo,
CARLOS DE LA ROSA, aka Charlie,
ERNESTO SAENZ, aka Tuerto,
LUIS ALBERTO TELLO, aka Wicho,
RICARDO ORTEGA,
and
VERONICA CHAVEZ

did knowingly conspire and agree together and with other persons known and unknown to the Grand Jury to intentionally possess with intent to distribute a controlled substance. All the above-named defendants conspired to possess with intent to distribute more than 100 kilograms of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, §§ 846, 841(a)(1) and 841(b)(1)(B).

## COUNT THREE
### (Conspiracy to PWID cocaine)

Beginning on or about January 2009 to the date of this First Superseding Indictment, in the Southern District of Texas and elsewhere, the defendants

EDUARDO HERNANDEZ, aka Lepo,
ARTURO RAMIREZ, JR., aka China,
DANIEL SAENZ, aka Danny Boy,
and
ROBERTO CORTEZ, aka Robe,

did knowingly conspire and agree together and with other persons known and unknown to the Grand Jury to intentionally possess with intent to distribute a controlled substance. All the above-named defendants conspired to possess with intent to distribute less than 500 grams of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 846, 841(a)(1) and 841(b)(1)(C).

## COUNT FOUR

(Conspiracy to PWID methamphetamine)

Beginning on or about January 2009 to the date of this First Superseding Indictment, in the Southern District of Texas and elsewhere, the defendants

ARTURO RAMIREZ, JR., aka China,
JOSE ROLANDO GONZALEZ, aka Rollie,
JESUS SILVA, aka Bola,
CIRO MOYA,
and
IVAN RODRIGUEZ

did knowingly conspire and agree together and with other persons known and unknown to the Grand Jury to intentionally possess with intent to distribute a controlled substance. All the above-named defendants conspired to possess with intent to distribute more than 50 grams of methamphetamine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 846, 841(a)(1) and 841(b)(1)(A).

## COUNT FIVE
(Conspiracy to launder monetary instruments)

Beginning on or about January 1, 2009 and continuing thereafter until the date of this First Superseding Indictment, in the Southern District of Texas, and elsewhere, and within the jurisdiction of the Court, defendants

MIKE BUENO, aka Mocho,
EDUARDO HERNANDEZ, aka Lepo,
ARTURO RAMIREZ, JR., aka China,
JOSE ROLANDO GONZALEZ, aka Rollie,
HIPOLITO GONZALEZ, aka Pollie,
ISRAEL GONZALEZ, aka Rayo,
ROLANDO CRUZ, aka Party,
LUIS ANTONIO SALDIVAR, aka Flaco,
OCTAVIO MUÑIZ, aka Tavo,
and
ROBERTO CORTEZ aka Robe

did knowingly conspire and agree together and with other persons known and unknown to the

Grand Jury to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, possession with intent to distribute controlled substances in violation of Title 21, United States Code, Section 841(a)(1) and conspiracy to possess with intent to distribute controlled substances in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting or attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, §§ 1956(h) and 1956(a)(1)(B)(i).

### COUNT SIX
(Interference with commerce by robbery)

On or about April 12, 2012, in the Southern District of Texas and within the jurisdiction of the Court, defendants

MIKE BUENO, aka Mocho,
JOSEPH ALBERTO LOPEZ,
MARGIL REYNA, JR., aka Mikeo,
JOSHUA OMAR SANTILLAN,
and
LUIS ALBERTO TELLO, aka Wicho,

did obstruct, delay and affect and attempt to obstruct, delay and affect commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce by robbery in that the defendants did unlawfully take and obtain a controlled substance, to-wit: marijuana, from the person and in the presence of Victor Manuel Serna against his will by means of actual and threatened force, violence and fear of injury, immediate and future, to his person.

In violation of Title 18, United States Code, §§ 1951(a) and 2.

## COUNT SEVEN
(Use of a firearm during a crime of violence / drug trafficking crime)

On or about April 12, 2012, in the Southern District of Texas and within the jurisdiction of

the Court, defendants

MIKE BUENO, aka Mocho,
JOSEPH ALBERTO LOPEZ,
MARGIL REYNA, JR., aka Mikeo,
JOSHUA OMAR SANTILLAN,
and
LUIS ALBERTO TELLO, aka Wicho,

did knowingly and intentionally use, carry and discharge a firearm, that is, a handgun, during and

in relation to:

i.      a drug trafficking crime, to wit: conspiracy to possess with intent to distribute a
        controlled substance as charged in Count Two;

ii.     a crime of violence, to-wit: interference with commerce by robbery as charged in
        Count Six;

for which they may be prosecuted in a court of the United States.

In violation of Title 18, United States Code, §§ 924(c)(1)(A), 924(c)(1)(A)(iii) and 2.

## COUNT EIGHT
(Use of a firearm during a crime of violence / drug trafficking crime resulting in death)

On or about April 12, 2012, in the Southern District of Texas and within the jurisdiction

of the Court, defendants

MIKE BUENO, aka Mocho,
JOSEPH ALBERTO LOPEZ,
MARGIL REYNA, JR., aka Mikeo,
JOSHUA OMAR SANTILLAN,
and
LUIS ALBERTO TELLO, aka Wicho,

did knowingly and intentionally use, carry and discharge a firearm, that is, a handgun, during and

22

in relation to:

    i.      a drug trafficking crime, to wit: conspiracy to possess with intent to distribute a controlled substance as charged in Count Two;

    ii.     a crime of violence, to-wit: interference with commerce by robbery as charged in Count Six;

for which they may be prosecuted in a court of the United States, causing the death of Victor Serna through the use of the firearm and said killing was murder as defined by Title 18, United States Code, § 1111, in that the defendants, acting with malice aforethought, did unlawfully kill Victor Serna by shooting him with a firearm.

In violation of Title 18 United States Code, §§ 924 (c), 924(j)(1) and  2.

### COUNT NINE
(PWID cocaine)

On or about May 3, 2012, in the Southern District of Texas and within the jurisdiction of the Court, defendants

ARTURO RAMIREZ, JR., aka China,
EDUARDO HERNANDEZ, aka Lepo,
and
DANIEL SAENZ, aka Danny Boy,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was less than 500 grams, that is, approximately 80 grams, of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, § 2.

### COUNT TEN
(PWID cocaine)

On or about June 1, 2012, in the Southern District of Texas and within the jurisdiction of

23

the Court, defendants

ARTURO RAMIREZ, JR., aka China,
and
EDUARDO HERNANDEZ, aka Lepo,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was less than 500 grams, that is, approximately 80 grams, of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, § 2.

**COUNT ELEVEN**
(PWID heroin)

On or about June 1, 2012, in the Southern District of Texas and within the jurisdiction of the Court, defendant

ARTURO RAMIREZ, JR., aka China,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was less than 100 grams, that is, approximately 28 grams, of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, § 2.

**COUNT TWELVE**
(PWID heroin)

On or about June 29, 2012, in the Southern District of Texas and within the jurisdiction of the Court, defendant

ARTURO RAMIREZ, JR,. aka China,

24

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was less than 100 grams, that is, approximately 60 grams, of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, § 2.

## COUNT THIRTEEN
(PWID cocaine)

On or about July 18, 2012, in the Southern District of Texas and within the jurisdiction of the Court, defendants

ARTURO RAMIREZ, JR., aka China,
EDUARDO HERNANDEZ, aka Lepo,
and
DANIEL SAENZ, aka Danny Boy,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was less than 500 grams, that is, approximately 80 grams, of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, § 2.

## COUNT FOURTEEN
(Interference with commerce by robbery)

On or about October 19, 2012, in the Southern District of Texas and within the jurisdiction of the Court, defendants

MIKE BUENO, aka Mocho,
RENE VELA, aka Gordo,
and
ROBERTO CORTEZ, aka Robe,

did obstruct, delay and affect and attempt to obstruct, delay and affect commerce, as that term is

defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and

commodities in such commerce by robbery in that the defendants did unlawfully take and obtain

a controlled substance, that is, marijuana, from the person and in the presence of Michael Lynn

McDonald against his will by means of actual and threatened force, violence and fear of injury,

immediate and future, to his person.

In violation of Title 18, United States Code, §§ 1951(a) and 2.

### COUNT FIFTEEN
(Use of a firearm during a crime of violence / drug trafficking crime)

On or about October 19, 2012, in the Southern District of Texas and within the jurisdiction

of the Court, defendants,

> MIKE BUENO, aka Mocho,
> RENE VELA, aka Gordo,
> and
> ROBERTO CORTEZ, aka Robe,

did knowingly and intentionally use, carry and brandish a firearm, that is, a long-arm, during and

in relation to:

i.     a drug trafficking crime, to wit: conspiracy to possess with intent to distribute a
       controlled substance as charged in Count Two;

ii.    a crime of violence, to-wit: interference with commerce by robbery as charged in
       Count Fourteen;

for which they may be prosecuted in a court of the United States.

In violation of Title 18, United States Code, §§ 924(c)(1)(A), 924(c)(1)(A)(ii) and § 2.

### COUNT SIXTEEN
(PWID cocaine)

On or about October 25, 2012, in the Southern District of Texas and within the jurisdiction

of the Court, defendant

ARTURO RAMIREZ, JR., aka China,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was less than 500 grams, that is, approximately 138 grams, of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, § 2.

## COUNT SEVENTEEN
(PWID cocaine)

On or about November 16, 2012, in the Southern District of Texas and within the jurisdiction of the Court, defendant

ARTURO RAMIREZ, JR., aka China,
ROBERTO CORTEZ, aka Robe,
and
ROBERTO REYES, aka Pelon,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was less than 500 grams, that is, approximately 103 grams, of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, § 2.

## COUNT EIGHTEEN
(PWID cocaine)

On or about December 6, 2012, in the Southern District of Texas and within the jurisdiction of the Court, defendant

27

ARTURO RAMIREZ, JR., aka China,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was less than 500 grams, that is, approximately 259 grams, of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, § 2.

### COUNT NINETEEN
(PWID marijuana)

On or about December 7, 2012, in the Southern District of Texas and within the jurisdiction of the Court, defendants

MIKE BUENO, aka Mocho,
EDUARDO HERNANDEZ, aka Lepo,
ARTURO RAMIREZ, JR,. aka China,
JOSE ROLANDO GONZALEZ, aka Rollie,
ERNESTO ALONZO RUIZ, aka Gallito,
HIPOLITO GONZALEZ, aka Pollie,
ISRAEL GONZALEZ, aka Rayo,
OCTAVIO MUÑIZ, aka Tavo,
ROBERTO CORTEZ, aka Robe,
RENE VELA, aka Gordo,
CARLOS DE LA ROSA, aka Charlie,
ERNESTO SAENZ, aka Tuerto,
RICARDO ORTEGA,
VERONICA CHAVEZ,
and
ROBERTO REYES aka Pelon,

did knowingly and intentionally possessed with intent to distribute a controlled substance. The controlled substance involved was more than 100 kilograms, that is, approximately 103 kilograms, of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance.

28

In violation of Title 21, United States Code, § 841(a)(1), 841(b)(1)(B) and Title 18, United States Code, § 2.

## COUNT TWENTY
(PWID cocaine)

On or about December 19, 2012, in the Southern District of Texas and within the jurisdiction of the Court, defendant

ARTURO RAMIREZ, JR., aka China,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was less than 500 grams, that is, approximately 383 grams, of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, § 2.

## COUNT TWENTY-ONE
(PWID cocaine)

On or about February 21, 2013, in the Southern District of Texas and within the jurisdiction of the Court, defendant

ARTURO RAMIREZ, JR., aka China,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was less than 500 grams, that is, approximately 127 grams, of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, § 2.

## COUNT TWENTY-TWO
### (PWID cocaine)

On or about December 3, 2013, in the Southern District of Texas and within the jurisdiction of the Court, defendant

ARTURO RAMIREZ, JR,. aka China,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was less than 500 grams, that is, approximately 28 grams, of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, § 2.

## COUNT TWENTY-THREE
### (PWID cocaine)

On or about December 12, 2013, in the Southern District of Texas and within the jurisdiction of the Court, defendant

ARTURO RAMIREZ, JR., aka China,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was less than 500 grams, that is, approximately 29 grams, of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, § 2.

## COUNT TWENTY-FOUR
### (PWID cocaine)

On or about February 3, 2014, in the Southern District of Texas and within the jurisdiction

30

of the Court, defendant

ARTURO RAMIREZ, JR., aka China,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was less than 500 grams, that is, approximately 29 grams, of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, § 2.

**COUNT TWENTY-FIVE**
(PWID methamphetamine)

On or about August 7, 2014, in the Southern District of Texas and within the jurisdiction of the Court, defendant

ARTURO RAMIREZ, JR., aka China,
CIRO MOYA,
and
IVAN RODRIGUEZ,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was more than 50 grams, that is, approximately 495 grams, of methamphetamine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(A) and Title 18, United States Code, § 2.

**COUNT TWENTY-SIX**
(PWID methamphetamine)

On or about August 21, 2014, in the Southern District of Texas and within the jurisdiction of the Court, defendants

ARTURO RAMIREZ, JR., aka China,

31

and
IVAN RODRIGUEZ,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was more than 50 grams, that is, approximately 1,000 grams, of methamphetamine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(A) and Title 18, United States Code, § 2.

## COUNT TWENTY-SEVEN
(PWID methamphetamine)

On or about July 14, 2016, in the Southern District of Texas and within the jurisdiction of the Court, defendant

JOSE ROLANDO GONZALEZ, aka Rollie,

did knowingly and intentionally possess with intent to distribute a controlled substance. The controlled substance involved was more than 50 grams, that is, approximately 2.9 kilograms, of methamphetamine, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(A) and Title 18, United States Code, § 2.

A TRUE BILL

ORIGINAL SIGNATURE ON FILE

FOREPERSON

32

ABE MARTINEZ
ACTING UNITED STATES ATTORNEY


Anibal J. Alaniz
Assistant United States Attorney


Casey N. MacDonald
Assistant United States Attorney


Catherine K. Dick
Trial Attorney
Organized Crime and Gang Section
United States Department of Justice

33